GARDNER, Appellant, *v.* BOARD OF EDUCATION OF THE CITY OF FARGO *et al.,* Respondents.

**1. Residence—Sufficiency of Facts to Constitute.**

Plaintiff claiming for his children the school privileges due a resident of a certain city, it appeared that prior to the fall of 1885 he resided with his family on a fully-equipped farm, owned by him, about 20 miles from the city; that each fall he took his family to the city, rented a house, sent his children to school during the winter, gave up the house in the spring, and returned with them to the farm; that a hired man remained on the farm, and took care of the stock during their absence; that farm-house furniture and other property was used in the city, and taken back in the spring; that he had no permanent business in the city during the winter; his reason for bringing the children in was that on the farm in the winter they were deprived of social and school advantages; that in the fall of 1886 he was a town officer where the farm was situated, and voted there at that time, but in the spring of 1887 he

voted in the city; that he and his family would probably return to the farm in the spring of 1888, if he continued to own it; but that he is now, January, 1888, in the city, with his family, and claims it as his residence. *Held* not a resident of the city, and not entitled to the privileges claimed.

PALMER and THOMAS, JJ., dissenting.

**2. Evidence of Residence—Choice.**

In determining the true residence, choice is an element to be considered, but it is inferior in weight to tangible acts, indicating residence.

(Argued February 21, 1888; affirmed February 22; opinion filed May 22, 1888.)

Appeal from the district court of Cass county; Hon. W. B. McCONNELL, Judge.

*A. D. Thomas*, for appellant.

The plaintiff's legal residence is in Fargo.

The term "residence" does not admit of an exact, all-comprehensive definition, for the reason that its signification varies according to the subject-matter with reference to which it is employed. *Frost* v. *Brisbin*, 19 Wend. 11; *Haggart* v. *Morgan*, 2 N. Y. 422; *Bell* v. *Pierce*, 51 N. Y. 12; *Stout* v. *Leonard*, 37 N. J. L. 492; *Fitzgerald* v. *Arel*, (Ia.) 16 N. W. Rep. 712; *Borland* v. *Boston*, 132 Mass. 337.

For some purposes one may have a winter and a summer residence. *Bartlett* v. *City*, 5 Sandf. S. C. R. 44; *Douglass* v. *Mayor*, 2 Duer, 110–118; *Stout* v. *Leonard*, 37 N. J. L. 492.

Generally, to gain a residence for purposes of taxation, or the exercise of political rights, it is said that the mental act of fixing upon a given place as one's permanent home for an indefinite period must concur with the overt physical act of actually residing there. McCrary, Elections, §§ 34–41; *Follweiler* v. *Lutz*, (Pa.) 2 Atl. Rep. 721; *Kemma* v. *Brockhaus*, 5 Fed. Rep. 762; *Sharon* v. *Hill*, 26 Fed. Rep. 337–343.

In a case of doubt as to which of two or more places constitutes a person's legal residence, the fact that he has recently voted at one of them is regarded as well-nigh conclusive of his intention to claim a domicile at that place. McCrary, Elec-

tions, § 34; *Follweiler* v. *Lutz*, (Pa.) 2 Atl. Rep. 721; *Winn* v. *Gilmer*, 27 Fed. Rep. 817–819.

Upon the question of residence a party may testify directly to his intention, and, if all his acts are consistent therewith, and he is not impeached or contradicted, his testimony upon this subject, as upon others, must be accepted as proof. *Kemma* v. *Brockhaus*, 5 Fed. Rep. 762; *Sharon* v. *Hill*, 27 Fed. Rep. 337–343.

*M. W. Greene* and *L. S. Norton*, for respondents.

The only question to be considered is, is the plaintiff a resident of the city of Fargo? The very definition of the word "resident" is, "one who has a stationary and fixed place of abode," and we submit that the temporary habitation of the plaintiff does not come within that definition. *Vanderpool* v. *O'Hanlon*, 5 N. W. Rep. 119, 53 Iowa, 257; *Dow* v. *Gould & Curry Manuf'g Co.*, 31 Cal. 629; *Du Puy* v. *Wurtz*, 53 N. Y. 556.

We do not consider it necessary to multiply authorities to sustain these decisions; and, applying them to the facts of this case, as found by the court, the judgment should be sustained.

McCONNELL, J.   Gardner, plaintiff below and appellant here, seeks by proceeding in *mandamus* to have his children admitted to the privilege of free attendance and tuition in the public schools in the city of Fargo.

The trial court, denying the peremptory writ, gave judgment in favor of the defendants.

It was conceded that appellant's children were of lawful school age, were in appellant's care and control, and were entitled to such privilege of free attendance and tuition, except as affected by appellant's residence. Defendants held that he was not a resident of Fargo, and therefore denied to his children the privilege of free attendance and tuition in the Fargo schools. The board of education exacted as a condition precedent to admission of appellant's children into said schools that tuition fees,

of the amount previously fixed by the board for all non-resident. pupils, be paid on their account.

The right of the board to exact and collect such tuition fees on the part of non-resident pupils was not denied.

The sole question, then, before the trial court, was as to appellant being a resident or non-resident of the city of Fargo. The court held that he was a non-resident; and it is conceded that, if such finding be correct, the judgment of the court must be affirmed.

Where a particular domicile is affirmed on one side and denied on the other, there are, broadly stated, two lines or types of cases presented,—one, where the particular domicile is conceded to have existed, and the evidence is only as to its loss or retention; the other, where the evidence goes wholly as to the original acquirement of the domicile. The case at bar is of the latter type. Appellant does not claim for his evidence that it. shows a *continuing* Fargo domicile, except as it may show a *beginning* Fargo domicile.

It may be noted in this connection that in all the proceedings. of the trial court no point was made on either side as to the technical difference between "residence" and "domicile," and that "residence" is used throughout the record as the synonym. of "domicile." While it has been said that "a clear difference exists in law between domicile and residence," (*Taney's Appeal,.* 38 Leg. Int. 294,) and it is true that there is a difference, taking the word "residence" in its narrower sense, as in the rule laid down by Story, Confl. Laws, § 41, where it is said: "Two things must concur to constitute domicile: *First,* residence;. and, *second,* intention of making it the home of the party,"— yet, as in the case at bar all turns upon the construction of "resident" and "non-resident," as used by the board of education of Fargo, the tacit assumption of counsel and court that these words were used in the technical sense of "domiciled" and "non-domiciled" may be suffered to pass without criticism, especially as a like tacit assumption is made in many cases throughout the reports. It may be regarded, therefore, as settled, so

far as the case at bar is concerned, that "residence" and "domicile" are synonymous.

Appellant claims that the beginning of his alleged domicile in Fargo was in the fall of 1885. It is shown clearly that prior to the fall of 1885 his domicile was near Everest, a small town in Cass county, distant some 20 miles from Fargo. Near Everest he owned and owns a farm of 800 acres, fully equipped with the live-stock and machinery necessary to run it. In the dwelling-house on this farm he lived with his family prior to the fall of 1885, and here was his domicile. On appellant, then, devolved not only the burden of proving his alleged Fargo domicile, but also the burden of proving his loss of the uncontested Everest domicile. He could not gain his alleged Fargo domicile without first losing his uncontested Everest domicile; and, while it is true that satisfactory proof of new domicile gained is sufficient proof of former domicile lost, yet the evidence in these cases is often so distinctly blended with facts having special reference to the new, and facts having special reference to the former, domicile, as to keep both propositions before the mind for separate consideration and separate solution before concluding that the proof of new domicile gained *is* satisfactory. "A domicile once acquired is presumed to continue until it is shown to have changed." *Mitchell* v. *U. S.*, 21 Wall. 350; *Somerville* v. *Somerville*, 5 Vesey, 787; *Harvard College* v. *Gore*, 5 Pick. 370; Whart. Confl. Laws, § 35.

"Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation." *Mitchell* v. *U. S., supra.*

To constitute a new domicile two things are indispensable: *First*, residence in the new location; *second*, the intention to remain there. Mere absence from a fixed home, however long continued, cannot work the change. *Anderson* v. *Anderson*, 42 Vt. 352.

Appellant's own testimony was the only testimony before the court upon the question of domicile. His testimony was that in the fall of 1885, and each fall since then, he took his family

to Fargo, rented a house there, and sent his children to the Fargo schools until the summer, when the rented house was given up, and all went back to the farm, to remain until fall again; that during the sojourns in Fargo, a man in appellant's employ remained on the farm, and took care of the stock, —twenty-one horses, a cow, two or three calves, and some hogs; that appellant was often at the farm during the Fargo sojourning of his family, but was not there "most of the time;" that the furniture of the Fargo house was furniture brought from the farm, and taken back in the summer, and that the only other property of appellant at the Fargo establishment,—two cows and two horses,—was equally migratory; that neither appellant nor his wife had any "permanent business" in Fargo during the winter months, which seems to mean that all they did in the city was to care for the family, in the narrower sense of the word; that appellant's reason for bringing his children to the city was that their "being out on the farm in the bleak winter, deprived of all society and church and school privileges, was rather a hard matter for them;" that in the fall of 1886 he was a township officer in the township where his farm is situated, and voted there that fall, but that he voted in Fargo in the spring of 1887; that he and his family will probably return to the farm in the spring of 1888, as in preceding summers, if he continues to own it; that he "now," to-wit, at the time of trial, January, 1888, resides with his family at Fargo, and claims Fargo as his residence and home.

If, upon this testimony, the trial court had found appellant to be duly domiciled in Fargo, it would, we think, have given undue weight to appellant's naked declaration claiming Fargo as his domicile. The objective facts—those matters not depending upon ingenious conjecture as to what may be graven on the hidden tablets of the mind—are clearly against the theory of appellant's domicile in Fargo. We do not think that any appellate court would venture to disturb the finding from appellant's testimony that neither in fact nor in intent had he changed his Everest domicile.

"Choice, as between two places of residence, is an element to be considered in determining which is the real domicile; but a choice in favor of one place will not be permitted to control a preponderance of evidence in favor of another.   *   *   *   If the evidence be equivocal and uncertain, then the choice may be sufficient to turn the scale; if the weight of it be one way, then an opposite intention or wish will be of little or no avail." *Thayer* v. *Boston*, 124 Mass. 146.

"It depends not upon proving particular facts, but whether all the facts and circumstances, taken together, tending to show that a man has his home or domicile in one place, overbalance all the like proofs tending to establish it in another." *Abington* v. *North Bridgewater*, 23 Pick. 170.

In cases much closer than the one at bar it has been held that the expression of choice or election between two potential domiciles is outweighed by objective facts.   In *Chenery* v. *Waltham*, 8 Cush. 327, the dividing line between two towns passed through the plaintiff's house, so that, to a certain extent, he practiced domiciliary acts in both.   Could his claim of domicile in one of the two towns bar the right of the other to claim him as a resident and tax-payer, upon the town so claiming showing a preponderance of domiciliary acts, done within its own limits? The judge was asked by plaintiff, who sought to recover back a tax paid to defendant, to rule that, if the true dividing line between the two towns passed through an integral portion of the dwelling-house occupied by him and his family, then he had a right to elect in which town he would be assessed on his personal property, and become a citizen.   This was refused, and it was rightly ruled that, if the house was so divided by the line as to leave that portion of it in which the occupant mainly and substantially performed those acts and offices which characterized his home (such as sleeping, eating, sitting, and receiving visitors) in one town, then the occupant would be a citizen of that town, and no right of election would exist; but that, if the house was so divided by the line as to render it impossible to determine in which town the occupant mainly and substantially

performed the acts and offices above referred to, then the occupant would have a right of election, and his election would be binding on both towns.

In these, and, we think, in all well-considered cases, the rule is to let the more tangible domiciliary acts have the greater weight in determining the true domicile. A man may spend but a small portion of his time at his domicile, and yet not in the least impair its *status* as his true domicile. Long sojourns elsewhere, accompanied by ordinary domiciliary acts, do not militate against it.

In the case at bar the *situs* of occupation and of property, coupled with the intention to return, fixed the Everest farm as appellant's real domicile. The intention to claim Fargo as a residence is merely a special, auxiliary intention, and, under all the circumstances, should have little weight in determining the actual domicile, "upon which so many important municipal obligations and privileges depend."

It is laudable on appellant's part to desire city advantages for his family; and the reasonable tuition fees collected in Fargo of non-resident pupils cannot be considered a practical hinderance to appellant's desire.

Had appellant's vote at Fargo in the spring of 1887 been challenged and refused, and the question of his right to so vote been before the lower court as the *gravamen* of this case, it must have decided against him. The fact of his so voting unchallenged is therefore of no importance. The judgment of the court below is affirmed.

All the justices concurring, except PALMER and THOMAS, JJ., who dissent.

THOMAS, J. I dissent from the foregoing opinion on the ground that in my opinion the undisputed evidence in the case shows the appellant to have been a *bona fide* resident of the city of Fargo.