[File No. 6074.]

THELMA ANDERSON, Respondent, v. AUGUST BREITH-BARTH et al., Members of the Board of Youngstown School District No. 19, Appellants.

(245 N. W. 483.)

Opinion filed November 29, 1932.

*Max A. Wishek,* for appellants.

*O. G. Abern,* for respondent.

*James Morris,* Attorney General and *Harold D. Shaft,* Assistant Attorney General, amici curiæ.

BURR, J. This case requires a definition of the phrase "residing in the district" as used in § 1343 of the Supplement which says: "The public schools provided for in this chapter (§§ 1105–1422 of the Compiled Laws of 1913) shall be at all times equally free, open and accessible to all children over six and under twenty-one years of age residing in the district."

In the fall of 1931 Thelma Anderson was sixteen years of age. During the school year of 1930 and 1931 she attended the public schools of Wishek, within the defendant school district; but in the fall of 1931 the school board learned of facts which led it to believe she was a nonresident of the district and therefore refused to permit her to enter the school unless tuition was paid. An application on her behalf for

a writ of mandamus to compel her admission was made to the district court. The court issued the writ and the defendant appeals.

The girl's parents, though former residents of this state are, and for several years have been residents of the state of South Dakota. Apparently the father deserted the family, and until about two years ago Thelma Anderson resided with her mother, being dependent on her mother for support. Neither parent has been deprived of the care or custody of the child, nor relieved from her support.

Mrs. A. W. Herr is a sister of the mother and resides with her husband in Wishek. Owing to the financial straits of the mother an agreement was entered into between her and her sister whereby the latter and her husband took this girl into their home as a member of their family. There was no adoption; but the arrangement was with the full consent and according to the wish of the girl involved. The sole purpose of this arrangement was to furnish a decent home for the girl and to lighten the financial burden of her mother. In accordance with the arrangement she came to live with her aunt and uncle and has been a member of their family ever since.

There is some contention on the part of the defendant that the girl came to live at Wishek merely for the purpose of going to school, but the court found to the contrary and the finding is sustained by the weight of the evidence. It is true that during the vacation period the girl lived with and worked for her grandmother and on another occasion did some outside work; but it is clear from the evidence that to all intents and purposes and so far as the agreement can arrange it, she is a member of the family of her aunt and uncle, and treated as such.

The historic policy of this state, in common with the general policy of every other state in the Union, is to maintain a free public school system for the benefit of all children within specified age limits.

This policy existed prior to statehood and is crystalized in §§ 147 and 148 of the State Constitution which read as follows:

"A high degree of intelligence, patriotism, integrity and morality on the part of every voter in a government by the people being necessary in order to insure the continuance of that government and the prosperity and happiness of the people, the legislative assembly shall make provision for the establishment and maintenance of a system of public schools which shall be open to all children of the state of North Dakota and free from sectarian control. This legislative requirement shall

be irrevocable without the consent of the United States and the people of North Dakota."

"The legislative assembly shall provide, at its first session after the adoption of this constitution, for a uniform system for free public schools throughout the state, beginning with the primary and extending through all grades up to and including the normal and collegiate course."

To carry out this policy school districts are formed, and the children "residing in the district" are entitled to the privileges. The schools must be free, open and accessible. The general policy is not to limit or circumscribe, but to be all inclusive and comprehensive. So definite is this policy that attendance at schools is compulsory, unless the child attends another school of equal or superior caliber recognized by the state. The policy is not to shut out a pupil but to compel attendance, and we are required to interpret the school laws in the light of this practically universal American principle. As stated in Yale v. West Middle School Dist. 59 Conn. 489, 22 Atl. 295, 13 L.R.A. 161:

"The state is interested to have all children educated in order that they may become good citizens. . . . If any child is actually dwelling in any school district, so that some person there has the care of it, and is within the school age, not incapable by reason of physical infirmity of attending school, and is not instructed elsewhere, then that child must go to the public school."

There is no question but that "statutes providing for a free public school system are, by the weight of authority, construed as evidencing an intention on the part of the state that all the children within its borders shall enjoy the opportunity of a free education." 24 R. C. L. 624. Hence we must take into consideration the established policy of the state, the aims and purposes of the constitutional provisions, and construe terms in harmony therewith.

An examination of our school laws shows that at times the legislature uses the term "legal residence" and at other times the term "residing in the district." It is urged on behalf of the defendant that because chapter 239 of the laws of 1931, in providing for a school census, requires the school board to cause an enumeration to be made "of all unmarried persons of school age, being over six and under twenty-one, having their *legal residence* in the district," that it is the intent of the

legislature to confine school privileges to those having "legal residence," and that this term "legal residence" must be construed in the light of the provisions of § 14 of the Compiled Laws of 1913.

This section says everyone has in law, a "residence," and defines "residence" as "the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he returns in seasons of repose." It prescribes rules for determining the place of residence, and says "there can be only one residence;" that such residence "cannot be lost until another is gained;" that "the residence of the father, during his life," is "the residence of the unmarried minor children;" and that the "residence of an unmarried minor who has a parent living cannot be changed by either his own act or that of his guardian."

It will be noted that this chapter 239 is but a reassertion of a provision existing in this state from an early period. Section 707 of the Code 1895 required such census of those whose "legal residence" was in the district; and though this section has been amended by chapter 75 of the Laws of 1897, chapter 81 of the Laws of 1899, and charter 78 of the laws of 1903 yet the term "legal residence" has been used always.

. Defendant contends that the term "legal residence" found in § 1195 providing for the school census is synonymous with "domicile" and is governed solely by the provisions of § 14 of the Compiled Laws already mentioned; that where the term "residing in the district" or similar expression is used it has the same meaning; and that the use of these separate terms by the legislature does not suggest a different legislative meaning, or different legislative intent.

So far as we can ascertain, and so far as it has been called to our attention, the term "legal residence in the district" is used but once and that in connection with the census. In other portions of this school law reference is made to children "residing in the district." Section 1141 of the Compiled Laws provides for the organization of a school district upon petition of "at least one-third of the residents of such territory." Section 1142 permits annexation of a portion of a school district "having not more than ten children of school age residing therein. . . ." Section 1144 provides for the consolidation into school districts of portions of a "civil township, having less than fifteen per-

sons of school age residing therein." Section 1146 provides for the change of boundaries upon petition of "a majority of the school voters residing in the districts." Sections 1147 and 1148 providing for the organization of a new district refer to "voters residing in the districts" and to the "residents of the districts." Section 1179 makes provision for the instruction of pupils residing in unorganized territory adjacent to the district. Section 1184, and other sections applying to elections, refer to "voters of the district." Clearly these latter and similar expressions are governed by § 1153 prescribing qualifications of voters, being the general qualifications specified by law as necessary for electors. They have no bearing upon the question of residence involved here. They contemplate such residence as is prescribed by law—legal residence—necessary in order to vote; but a person may be a resident of the district and not a voter. He may be an alien and yet his children are entitled to school privileges. It is clear that it is not necessary to be an elector in order to require school privileges for the children in the home. Right of suffrage therefore is not the test.

This court has had occasion to point out the different meanings attached to the word "residence" as used by the legislature in determining rights of individuals. In Enderlin v. Pontiac Twp. ante, 105, 242 N. W. 117, we showed that in construing statutes involved in that case the "word 'reside' and the word 'residence'—have reference to the actual residence, the place where a person actually lives and stays, as distinguished from the legal or technical residence or domicile, of an individual," discussing section 14 of the compiled laws of this state. Such distinction is in harmony with principles announced in other jurisdictions. As stated in Raymond v. Leishman, 243 Pa. 64, 89 Atl. 791, L.R.A.1915A, 400, Ann. Cas. 1915C, 780: "The words 'residence' and 'domicile' are not convertible terms, and the latter has the more extensive signification. Residence is often used to express different meanings according to the subject-matter. It may be said to be the dwelling place of a person and may be his permanent or temporary abode. It may mean the domicil of a person or his temporary presence in the locality. . . . A man can have but one domicil for one and the same purpose at any one time, though he may have numerous places of residence. 'Residence' is a word whose statutory meaning depends upon the context and the purpose of the statute, which may, as

used in one statute, be fulfilled by mere business residence, and in another require domicil in the strictest and most technical sense. In ascertaining the meaning of this word in a particular statute, the legislative purpose, as well as the context, must be kept in view."

The term "residence" as used in § 14 of the Comp. Laws is clearly synonymous with "domicile;" but throughout our Code we find the wider definition and meaning of "residence" as present in the legislative mind. The statutory words involved "are to be construed according to the common and approved usage of the language, unless they have acquired a peculiar and appropriate meaning in the law, or from the context or manifest purpose of the Legislature it is apparent a different meaning was intended." Lisbon School Dist. v. Landaff Town School Dist. 75 N. H. 324, 74 Atl. 186.

In other jurisdictions this distinction is clearly applied to questions involved in the right of children to attend the free public schools, where such right is dependent upon "residing in the district" and in all these cases it is shown the child may have a residence for school purposes distinct and separate from the domicile of the parent. See Hewitt v. Wheeler, School & Library, 82 Conn. 188, 72 Atl. 935; Lisbon School Dist. v. Landaff Town School Dist. 75 N. H. 324, 74 Atl. 186, supra; People ex rel. Brooklyn Children's Aid Soc. v. Hendrickson, 54 Misc. 337, 104 N. Y. Supp. 122.

In State ex rel. Halbert v. Clymer, 164 Mo. App. 671, 147 S. W. 1119, where a boy lived with his grandfather under an agreement with the father who resided in another district by which the grandfather agreed to care for and educate the child and the contract was made in good faith and not for the sole purpose of permitting the boy to attend the public school located in the district of the grandfather's "residence," it was held the boy was "entitled to enjoy the public school facilities of the district of the grandfather's residence without payment of tuition." In that case the court said that the policy of the state "is to educate and furnish free of charge good schools for all children of school age, even to compel the attendance of children thereto."

As said in School Dist. v. Pollard, 55 N. H. 503, 504, the test of "residence there for the purpose of schooling is not the residence declared essential for taxation or the exercise of the right of suffrage."

As shown in State ex rel. School Dist. v. Thayer, 74 Wis. 48, 41 N. W. 1014, 1016, for school purposes, an infant may have a different residence than that of his parents otherwise many "unfortunate children, for whose benefit our free schools were especially instituted, would be deprived of all benefits of them."

That a child, whose parents have not maintained a residence in a district, may nevertheless be entitled to the school privileges therein, and may have actually become a resident of the district for that purpose has been determined in many cases. In McNish v. State, 74 Neb. 261, 104 N. W. 186, 12 Ann. Cas. 896, it was held that a child "going to live with a relative under an arrangement by which she is to raise and educate her, and treat her in all respects as her own child, is a resident of the school district in which she resides with such relative." See also Mizner v. School Dist. 2 Neb. (Unof.) 238, 96 N. W. 128. In Stanford Graded Common School Dist. v. Powell, 145 Ky. 93, 140 S. W. 67, 36 L.R.A.(N.S.) 341, Ann. Cas. 1913B, 1016, a mother, having no home or means of securing one, gave her child to her sister who was "to have full charge of it and give it a home" and it was held that the residence of such child was that of the sister. In this case the court distinguishes this holding from the earlier one in Board of Education v. Foster, 116 Ky. 484, 76 S. W. 354, 3 Ann. Cas. 692, where the child had been sent to the relative simply for the purpose of having it attend the schools.

In Yale v. West Middle School Dist. 59 Conn. 489, 22 Atl. 295, 13 L.R.A. 161, the child involved was left with persons other than her parents "with the present intent on her part and on the part of her parents, and the people with whom she lives, of remaining permanently." This was held sufficient to give her a residence for school purposes, even though her parents resided out of the state, the court saying "a legal domicile is not required."

In People ex rel. Brooklyn Children's Aid Soc. v. Hendrickson, 54 Misc. 337, 104 N. Y. Supp. 122, the phrase "residing in the district" when used in the school laws, and with reference to children entitled to school privileges, is construed in the light of "the well recognized policy of the statute relating to education . . . Compulsory Education Law . . . making it obvious that it was not the legislative

intent to employ the word 'residence' as used in the school law in the narrow sense of domicile.''

A territorial decision—Gardner v. Board of Education, 5 Dak. 259, 38 N. W. 433—might indicate that for school purposes "residence" and "domicile" are synonymous; but the opinion says distinctly that in this case cited "no point was made on either side as to the technical difference between 'residence' and 'domicile,' and that 'residence' is used throughout the record as a synonym of 'domicile.' '' That case turned upon whether or not the person involved was domiciled in Fargo. It was shown he was not; that he came to Fargo merely for the purpose of getting the school privileges for his children; that he resided in another district, and voted and held office in that district. Hence this case has no value in determining the legislative intent expressed in the law under consideration.

It is urged on behalf of the defendant that the New Jersey Court holds contrary to the view expressed here, citing Mansfield Twp. Bd. of Edu. v. State Bd. of Edu. 101 N. J. L. 474, 129 Atl. 765. However when we examine the case cited we find the child involved therein was brought into the district to secure the school privileges, and not for the purpose of establishing a residence.

It is claimed Binde v. Klinge, 30 Mo. App. 285, sustains the views of the defendant. It is true the court in that case held the child concerned was not entitled to school privileges even though she came to live permanently with her grandmother, a resident of the school district, and became a member of the home of her grandmother; but the court reaches its conclusions because of the peculiar language of the statute under consideration. The court construes the Missouri statute as holding that the law specifically admits to free school privileges orphan children only, or apprentices brought into the district and therefore inferentially excludes all others, saying that were it not for such language in the statute "we should have considerable difficulty in saying that a child who has come to live permanently with its grandmother without any expectation of returning to its parental home . . . and who has not been sent there merely for the purpose of acquiring the privileges of a better school than exists at her actual domicil is not a 'resident' of such school district although her father

may reside elsewhere in the state or with the remaining portion of the family."

Section 1342 of the Compiled Laws says every person—whether guardian, parent, or other person "who has control over any child of or between the ages of eight and fifteen, shall send such child to a public school in each year during the entire time the public schools of such district or city are in session" unless "such . . . person having control of any child shall be excused from such duty." The same section in subdiv. 5 says: "If no school is taught the requisite length of time within two and one-half miles of the residence of such child by the nearest route such attendance shall not be enforced," etc. Clearly this statute requires any person having charge of a child, that is some child living in his home even though not his own child, shall send that child to the school and refers to that home as the "residence" of such child. It is significant that this section is followed immediately by the one involved in this case which provides that the public schools, "shall be at all times equally free, open and accessible to all children residing . . . in the district." This is followed by the section prescribing the penalty for failure of such person to send the child to school and then by the section specifying who shall prosecute such person for its neglect of duty. These sections 1342 to 1345 inclusive, are in article 15 of chapter 12 of the Political Code dealing with education and are all part of one legislative act, chapter 266 of the session laws of 1911, except as here and there amended by subsequent legislation. It is clear the legislature, in compelling the attendance of children at school, did not have in mind the domicile of the parent but had in mind the place where the child actually lived and stayed as his home, whether living with parent or with guardian or with one who was furnishing a home but had not adopted him.

The purpose of the arrangement made for the benefit of the child in this case was to give her a home. It was not to evade the payment of tuition. If the contention of the defendant be correct then this child would not be entitled to school privileges anywhere in the state without paying tuition, for her parents reside nowhere in the state. She would be found to be living in the home of her aunt and uncle, as a member of their family, and yet the state could not even compel them to send her to school in any district without the payment of tuition.

Such is not the policy of this state. The term "residing in the district" means what it says—a child who makes its home in that particular district, whether with its parents, or with other persons, when that place is the only home it has, a place to which she comes and where she remains when not "called elsewhere for labor or special or temporary purpose."

The parent's business may call him to other parts of the state. He may be required to take his family with him. He may desire to maintain his old home; but if his work and business require his presence, and the presence of his family in another place and in another district then the children are "residing in the district" so far as school facilities are concerned. They are not there to evade tuition or for any purpose for which tuition may be charged. The state provides free public education and the charge of tuition is a restriction upon such "free" schools which restriction must be construed strictly.

It will be noted that § 1343 of the Supplement says the school shall be free and open "to all children . . . residing in the district." It does not say to all children of persons residing in the district—whether parents, guardian, or otherwise. As pointed out in Lisbon School Dist. v. Landaff Town School Dist. 75 N. H. 324, 74 Atl. 186, supra, "as the legal domicile of the unemancipated minor would necessarily be that of her father if the word 'resides' were used in that sense," and "residence" and "domicile" were synonymous then the statute would state that the schools were open to children of all persons residing in the district. It is clear the term "residing" must be construed with reference to the children, and thus cover all cases where children are actually living in the district, and making it their home, whether in the custody of parents, or a guardian or of any charitable and kindly disposed person. It includes a minor, who is an orphan and has no legal guardian, providing his home is in that district.

There is nothing in this construction of the law which permits any child to come into a school district merely for the purpose of obtaining school privileges. Wisconsin makes such distinction in State ex rel. Smith v. Board of Education, 96 Wis. 95, 71 N. W. 123. The requirements for the payment of tuition governs such a case; and it is immaterial whether the child comes alone or the parents come with it.

When the purpose is the purpose of a non-resident to obtain the school privileges then the law providing for tuition governs.

But the evidence here shows conclusively this was not the purpose in the case at bar. There is no question but the Herr home in Wishek is the place where Thelma Anderson remains "when not called elsewhere for labor or other special or temporary purpose, and to which she returns in seasons of repose."

Neither does this construction in any way affect the inmates of any corrective or charitable institution. The principle governing such inmates is not involved in this controversy.

The decision of the lower court is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.