B.R.T., Petitioner and Appellant,

v.

The EXECUTIVE DIRECTOR OF the SOCIAL SERVICE BOARD of NORTH DAKOTA, Respondent and Appellee.

In the Interest of L.D.R.T., a Child.

Civ. No. 11062.

Supreme Court of North Dakota.

July 16, 1986.

Michael T. Mahoney, Seattle, Wash., and Dakota Plains Legal Services, Fort Yates, for petitioner and appellant.

Blaine L. Nordwall, Asst. Atty. Gen., Bismarck, for respondent and appellee.

Sonosky, Chambers & Sachse, Washington, D.C., and Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for amicus curiae Standing Rock Sioux Tribe. Submitted on brief.

VANDE WALLE, Justice.

B.R.T. appealed from a juvenile court[1] order denying her motion for "redetermination" of a previously entered order terminating her parental rights to L.D.R.T., an Indian child. We affirm.

On August 17, 1983, B.R.T. executed a voluntary petition for the termination of her parental rights to L.D.R.T., who at that time was seven years old. Both B.R.T. and L.D.R.T. were enrolled members of the Standing Rock Sioux Tribe living in Bismarck. L.D.R.T.'s father is deceased. A "Notice of Impending Proceeding in State Court Involving Native Americans" was served upon the Standing Rock Sioux Tribal Court. A hearing was held on September 16, 1983, but the Tribe neither appeared at the hearing nor responded to the petition. Following the hearing, the juvenile court referee recommended that B.R.T.'s parental rights be terminated; that the care, custody, and control of the child be transferred to the Social Service Board of North Dakota [Department][2] for the pur-

---

1. Although this case is captioned as a district court proceeding, we treat it as a juvenile court proceeding and note that "juvenile court" is defined in § 27–20–02(6), N.D.C.C., as "the district court of this state."

2. The North Dakota Department of Human Services is the successor agency of the former Social Service Board of North Dakota. See § 50–06–01.1, N.D.C.C.

pose of placing the child for adoption; and, because B.R.T. had requested anonymity pursuant to provisions of the Indian Child Welfare Act, 25 U.S.C. § 1901, *et seq.*, recommended that the Department and any child-placing agency involved in the case "shall not notify said child's extended family or tribe in order that their members will be given preference in the adoption decision." The juvenile court confirmed the referee's findings and recommendations on September 21, 1983. No appeal was taken from that order.

After the termination order was entered, L.D.R.T. remained in B.R.T.'s home awaiting placement with a family B.R.T. had hoped would adopt the child. However, the family was unable to adopt L.D.R.T., and Lutheran Social Services, a child-placing agency, attempted to find another placement for L.D.R.T. L.D.R.T. remained in B.R.T.'s custody until January 1984, when B.R.T. sent the child to live with her brother and sister-in-law in Montana. The sister-in-law contacted Lutheran Social Services and expressed a desire to adopt L.D.R.T., but during March 1984, before the proposed placement could be investigated, L.D.R.T. was returned to B.R.T.

Lutheran Social Services subsequently contacted another child-placing agency, the Village Family Service Center [the Village], and asked that it handle the adoptive placement of L.D.R.T. During an April 1984 meeting between B.R.T. and a representative of the Village, B.R.T. indicated that she no longer wanted to have L.D.R.T. placed for adoption. The Lutheran Social Services representative informed B.R.T. that she should seek legal assistance to get the termination order vacated. No formal action was taken by B.R.T. at that time. In the meantime, efforts were continued to find a foster family for L.D.R.T.

A foster family was found, and L.D.R.T. was removed from B.R.T.'s home by a representative of the Village and the foster mother on May 25, 1984. According to the Village representative, B.R.T. was cooperative, had all of L.D.R.T.'s belongings packed, and, after visiting with the foster mother, stated that she was happy that L.D.R.T. would be living on a farm. The foster family was non-Indian.

The Village attempted to find an Indian family to adopt L.D.R.T. Those efforts proved unsuccessful and during November 1984 the Village began looking for a non-Indian adoptive family. The foster family with whom L.D.R.T. had been placed after removal from B.R.T.'s home sought to adopt the child, and on December 30, 1984, L.D.R.T. was formally placed for adoption with the foster parents. According to counsel, a petition for adoption has since been filed and the action remains pending in the district court.

In March 1985, B.R.T. brought a motion seeking a "redetermination" of the September 21, 1983, order terminating her parental rights. Following two hearings, the court denied the motion, which it treated as a petition for modification or vacation of the earlier order. The court determined that, among other things, B.R.T.'s consent to the termination was voluntary and that the petition "was instituted by [B.R.T.] of her own decision and volition, and not as the result of any pressure, duress, or promise made by the Juvenile Court or its Referee, ... or by Lutheran Social Services or its agent, ... and particularly was not the result of any representation that [L.D.R.T.] would be placed with any particular adoptive family;" that B.R.T.'s consent was not withdrawn prior to the entry of the final decree of termination; that B.R.T. "actively cooperated in and consented to the removal of [L.D.R.T.] from her home while fully aware of her rights;" that B.R.T. made no showing that the order terminating parental rights was obtained by fraud or mistake; and that "[a]ll appropriate provisions of federal law were complied with in the proceedings, ..." B.R.T. has appealed.

## MOTION TO DISMISS

The Department has moved to dismiss B.R.T.'s appeal asserting that it was not timely filed and that no appeal lies from

the denial of a motion to vacate. We reject both contentions.

The Department contends that although the appeal was filed within 60 days in compliance with Rule 4(a), N.D.R.App.P., the 30–day limit for appeals under § 27–20–56(1), N.D.C.C., of the Uniform Juvenile Court Act controls in this case. Relying upon Rule 49(b), N.D.R.App.P., and *State v. Stokes*, 240 N.W.2d 867 (N.D.1976), B.R.T. asserts that the 30–day limit set forth in § 27–20–56(1), N.D.C.C., has been superseded by Rule 4(a), N.D.R.App.P. Regardless of whether Rule 4(a) has superseded the 30–day time limit under the Uniform Juvenile Court Act, § 27–20–56(1), N.D.C.C., specifically allows the filing of the notice of appeal to occur "within any further time the supreme court grants, ..." We deem this an appropriate case for an extension, and conclude that B.R.T.'s appeal was timely filed.

The Department next asserts that the denial of a motion to vacate a judgment is not appealable. The Department contends that allowing appeals from such orders permits an unsuccessful litigant to, in effect, extend the time for appeal from the original judgment. The Department misconceives the nature of a motion to vacate a judgment.

■ This court's function in reviewing a trial court's denial of a motion to set aside a regularly entered judgment is not to determine if the trial court was substantively correct in entering the judgment from which relief is sought, but is to determine if the trial court erred in ruling that sufficient grounds for disturbing the finality of the judgment were not established. See *Fleck v. Fleck*, 337 N.W.2d 786 (N.D. 1983). Consequently, this court has held

that an order denying a motion to vacate a judgment constitutes an appealable order under § 28–27–02(2), N.D.C.C. See *Union Storage & Transfer Co. v. Smith*, 79 N.D. 605, 58 N.W.2d 782 (1953); *Boyd v. Lemmon*, 49 N.D. 64, 189 N.W. 681 (1922).[3] We conclude that we have jurisdiction to consider B.R.T.'s appeal.

### MERITS

*1. State Law*

■ The juvenile court determined that B.R.T. did not make a sufficient showing under § 27–20–37(1), N.D.C.C., which requires a showing similar to that mandated to obtain relief under Rule 60(b), N.D.R. Civ.P., to require the court to modify or vacate the previous order terminating parental rights. We agree.

B.R.T.'s testimony at the two hearings on the motion seeking "redetermination" clearly reflects that it was her decision to have L.D.R.T. removed from her home and placed for adoption. The record further discloses that B.R.T. consented to the termination of parental rights voluntarily, and that she understood the effect of the termination.[4] B.R.T. testified that no promises were made that the family she hoped would adopt L.D.R.T. would do so, and that she knew if the family did not adopt L.D.R.T., the child would not be returned to her but would be placed with another family. We conclude that the juvenile court did not err in refusing to vacate the termination order on the grounds set forth in § 27–20–37(1), N.D.C.C.

■ B.R.T. and the amicus curiae also assert that because L.D.R.T. has not yet been formally adopted, and because more than 18 months have passed since the termination order was entered, § 27–20–47(2),

**3.** The Department asserts that in *George Dixon, Inc. v. Central Motors Co.*, 68 N.D. 264, 278 N.W. 648 (1938), this court held that an order refusing to vacate or modify a judgment is not appealable. However, the court in *George Dixon, Inc., supra*, 68 N.D. at 269, 278 N.W. at 650, held that the order refusing to vacate the judgment was not appealable only insofar as the "appeal seeks to review the merits" of the judgment under attack. Thus *George Dixon, Inc.* is

not inconsistent with our other case law addressing the subject. E.g., *Fleck v. Fleck*, 337 N.W.2d 786 (N.D.1983).

**4.** The suggestion in the briefs of B.R.T. and the amicus curiae that the proceedings leading up to the September 21, 1983, termination order were actually involuntary in nature is without merit.

N.D.C.C., requires that this case be remanded "for entry of further orders for the care, custody, and control of the child." We initially note that a failure to comply with § 27–20–47(2), N.D.C.C., does not affect the order terminating B.R.T.'s parental rights. See § 27–20–36(1), N.D.C.C.; Commissioner's Note to Uniform Juvenile Court Act § 50, 9A U.L.A. 77 (1979). L.D.R.T. was placed for adoption on December 30, 1984, a petition for adoption was subsequently filed, and, according to counsel, the case remains pending. A remand for entry of further orders concerning L.D.R.T.'s care, custody, and control would serve no useful purpose at this point. We conclude that the technical violation of § 27–20–47(2), N.D.C.C., in this case does not require a modification, remand, or reversal of the juvenile court's order.

### 2. *Indian Child Welfare Act*

Under the provisions of the Indian Child Welfare Act, the parent of an Indian child has the right to petition a court of competent jurisdiction to invalidate any action for termination of parental rights upon a showing that such action violated §§ 1911, 1912, or 1913 of the Act. See 25 U.S.C. § 1914. B.R.T. and the amicus curiae assert that numerous violations occurred in these proceedings.

B.R.T. contends that the juvenile court lacked jurisdiction over the termination proceedings because she and L.D.R.T. were in fact residents and domiciliaries of the Standing Rock Sioux Reservation. Section 1911(a) of the Act provides in pertinent part:

"*(a) Exclusive jurisdiction*

"An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law...."

■ Every person has only one legal residence or domicile, as distinguished from the possibility of several actual physical residences. See § 54–01–26, N.D.C.C.; *Anderson v. Breithbarth,* 62 N.D. 709, 245 N.W. 483 (1932) [the term "residence" as used in statute is synonymous with "domicile"]. We have defined "legal residence" as "the place where an individual has established his home, where he is habitually present, and which he intends to return to when he is away for business or pleasure." *Dietz v. City of Medora,* 333 N.W.2d 702, 705 (N.D.1983). The legal residence or domicile of the surviving, supporting parent is the domicile of an unmarried minor child. See § 54–01–26(4), N.D.C.C. There is a presumption against a change of legal residence and the burden of proving a change of legal residence is on the person alleging the change. *Dietz, supra.* Legal residence, determined according to the rules in § 54–01–26, N.D.C.C., is a question of fact which will not be disturbed on appeal unless it is clearly erroneous. *Dietz, supra;* Rule 52(a), N.D.R.Civ.P.

■ In her petition for termination of parental rights, B.R.T. stated that she was a resident of Bismarck and that L.D.R.T. was in her care, custody, and control. During the hearings on the motion to vacate the termination order, no evidence was introduced that L.D.R.T. or B.R.T. resided or were domiciled within the Standing Rock Sioux Reservation at the time the termination order was entered. Indeed, L.D.R.T.'s domicile appears to have been undisputed.[5] In its order denying the motion to

---

5. During the hearing on the motion to vacate the termination order, the following colloquy took place between B.R.T.'s counsel and the court:

"MR. SMITH: There has been an issue raised—first of all that the jurisdictional issue based on the Indian Child Welfare Act.

"THE COURT: I think I have jurisdiction, otherwise I wouldn't have held this hearing today, and you seem to think that maybe if you thought they had jurisdiction, what are you doing in my court, other than to move to do nothing.

"MR. SMITH: My brief, it appears to indicate that I am contesting it. I am not. The only thing—

"THE COURT: You are not?

vacate, the juvenile court expressly found as a fact that at the time of the voluntary termination proceedings, B.R.T. and L.D.R.T. resided and were domiciled in Bismarck. The court further found that B.R.T., during the course of the prior proceedings, objected to the Standing Rock Sioux Tribe having jurisdiction, notice, or a right to intervene in the proceedings. See 25 U.S.C. § 1911(b).[6] From our review of the record before us, we cannot say that the juvenile court's findings are clearly erroneous and conclude that the court properly exercised jurisdiction. Cf. *Matter of Adoption of Baby Child*, 102 N.M. 735, 700 P.2d 198 (1985).

■ B.R.T. contends that she should be allowed to withdraw her consent to the termination of parental rights because L.D.R.T.'s adoption is not yet final. She relies upon 25 U.S.C. § 1913(c), which provides:

*"(c) Voluntary termination of parental rights or adoptive placement; withdrawal of consent; return of custody*

"In any voluntary proceeding for termination of parental rights to, or adoptive placement of, an Indian child, the consent of the parent may be withdrawn for any reason at any time prior to the entry of a final decree of termination or adoption, as the case may be, and the child shall be returned to the parent."

Although a final decree terminating parental rights has been entered, because there has been no final decree of adoption entered, B.R.T. asserts that under the statute she still retains the right to have L.D.R.T. returned to her. We disagree, and adopt the following rationale of the court in *Matter of J.R.S.*, 690 P.2d 10, 13–14 (Alaska 1984):

"[W]e do not believe that § 1913(c) allows a parent to withdraw a voluntary relinquishment of parental rights after a final order terminating those rights has been entered. Section 1913(c) applies to two kinds of proceedings: to voluntary proceedings for termination of parental rights and to voluntary proceedings for the adoptive placement of Indian children. The consent it refers to may be one of two kinds: a consent to termination of parental rights or a consent to adoptive placement. A consent to termination may be withdrawn at any time before a final decree of termination is entered; a consent to adoption at any time before a final decree of adoption. If Congress had intended consents to termination to be revocable at any time before entry of a final decree of adoption, the words 'as the case may be' would not appear in the statute."

We conclude that B.R.T.'s right to withdraw her consent to the termination under § 1913(c) expired when the order terminating parental rights became final in 1983.[7]

■ B.R.T. also asserts that the termination order should be vacated because the

---

"MR. SMITH: I am not contesting any type of jurisdictional function of this Court."

**6.** 25 U.S.C. § 1911(b) provides:

*"(b) Transfer of proceedings; declination by tribal court*

"In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided,* That such transfer shall be subject to declination by the tribal court of such tribe." [Emphasis in original.]

**7.** B.R.T. relies upon *Matter of Appeal in Pima County,* 130 Ariz. 202, 635 P.2d 187 (Ct.App.

1981), *cert. denied sub nom. Catholic Social Services of Tucson v. P.C.,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), in urging that we reach a contrary conclusion. In *Pima County, supra,* 130 Ariz. at 204, 635 P.2d at 189, however, the document relinquishing parental rights to the child specifically stated that the mother had been " 'advised and understands that this relinquishment may be withdrawn anytime prior to the entry of a final decree of adoption.' " The document also set forth the procedure for revocation, which the mother subsequently followed. In the present case, B.R.T. testified that she was advised and knew that the termination would be "permanent and final." In any event, to the extent that *Pima County* may support a valid withdrawal of consent under § 1913(c) after a final decree of termination has been entered, we find the case unpersuasive.

Department failed to show that active efforts were made to provide rehabilitative services to prevent the breakup of her family. Section 1912(d) of the Act provides:

> "(d) Remedial services and rehabilitative programs; preventive measures
>
> "Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."

Although it is not clear from the terms of the statute whether § 1912(d) applies only to involuntary, rather than voluntary proceedings, the legislative history indicates that the provision was intended to impose a Federal requirement that public or private agencies involved in child placements resort to remedial measures prior to *their* initiation of placement or termination proceedings. See H.R.Rep. No. 1386, 95th Cong., 2d Sess. 22, *reprinted in* 1978 U.S. Code Cong. & Ad. News 7530, 7545. Under B.R.T.'s argument, an Indian parent who initiates proceedings for the voluntary termination of parental .rights would be required to present evidence that active efforts had been made to prevent the breakup of the family, and that those efforts proved unsuccessful, before a court could grant the voluntary petition. B.R.T. has provided no authority for this proposition, and we do not believe that Congress intended such a result. We conclude that § 1912(d) does not apply to voluntary proceedings, as in this case, for the termination of parental rights.

██ B.R.T. and the amicus curiae contend that the Indian Child Welfare Act was violated when the juvenile court failed to appoint counsel for her and L.D.R.T. during the voluntary termination proceedings.

Section 1912(b) of the Act provides in pertinent part:

> "(b) Appointment of counsel
>
> "In any case in which the court determines indigency, the parent or Indian custodian shall have the right to court-appointed counsel in any removal, placement, or termination proceeding. The court may, in its discretion, appoint counsel for the child upon a finding that such appointment is in the best interest of the child...."

We initially note that the legislative history of this provision clearly indicates that it is intended to apply only to involuntary, rather than to voluntary, proceedings for the termination of parental rights. See H.R. Rep. No. 1386, 95th Cong., 2d Sess. 22, *reprinted in* 1978 U.S. Code Cong. & Ad. News 7530, 7544 ["Subsection (b) provides that an indigent parent or Indian custodian shall have a right to court-appointed counsel in any *involuntary* State proceeding for foster care placement or termination of parental rights"]. (Emphasis added.) Moreover, the record reflects that the juvenile court referee advised B.R.T. that "[i]f you desire legal counsel and are unable because of undue financial hardship to employ counsel, the court, upon your request, will appoint legal counsel for you." B.R.T. never requested counsel. We conclude that § 1912(b) was not violated by the court's failure to appoint counsel for B.R.T. and L.D.R.T. during the termination proceedings.

B.R.T. and the amicus curiae assert that the termination order should be vacated because the Department allegedly failed to apply the placement preferences mandated by 25 U.S.C. § 1915 with regard to the preadoptive placement and subsequent adoptive placement of L.D.R.T.[8] In the alternative, B.R.T. and the amicus curiae urge that we remand this case so that an adoptive placement can be pursued that complies with the Act.

---

**8.** "Preadoptive placement" is defined in 25 U.S.C. § 1903(1)(iii) as "the temporary placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement; ..." An "adoptive placement" is defined

in 25 U.S.C. § 1903(1)(iv) as "the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption." The placement preferences are set forth in 25 U.S.C. § 1915, which provides in pertinent part:

■ We initially note that this issue was not raised in the district court and thus B.R.T. is precluded from raising the issue on appeal. See *Williams Cty. Social Services Bd. v. Falcon,* 367 N.W.2d 170 (N.D. 1985). More important, however, invalidation of a parental rights termination may not be accomplished by showing a violation of the placement preferences in a proceeding brought pursuant to 25 U.S.C. § 1914.[9]

According to counsel, a petition to adopt L.D.R.T. has been filed and the action remains pending in the district court. At that proceeding, the court will be required under 25 U.S.C. § 1915 to apply the place-

*"§ 1915. Placement of Indian children*
*"(a) Adoptive placements; preferences*
"In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families.
*"(b) Foster care or preadoptive placements; criteria; preferences*
"Any child accepted for foster care of preadoptive placement shall be placed in the least restrictive setting which most approximates a family and in which his special needs, if any, may be met. The child shall also be placed within reasonable proximity to his or her home, taking into account any special needs of the child. In any foster care or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with—
"(i) a member of the Indian child's extended family;
"(ii) a foster home licensed, approved, or specified by the Indian child's tribe;
"(iii) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or
"(iv) an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs.
*"(c) Tribal resolution for different order of preference; personal preference considered; anonymity in application of preferences*
"In the case of a placement under subsection (a) or (b) of this section, if the Indian child's tribe shall establish a different order of preference by resolution, the agency or court effecting the placement shall follow such order so long as the placement is the least restrictive setting appropriate to the particular needs of the child, as provided in subsection (b) of this section. Where appropriate, the preference of the Indian child or parent shall

ment preferences, or to find "good cause to the contrary" for not doing so.[10] B.R.T.'s motion for "redetermination" of the order terminating parental rights, treated either as a § 1914 petition, or as a motion to vacate the judgment pursuant to State law, is an improper vehicle for challenging the alleged violation of the placement preferences mandated by the Act.

Accordingly, the order denying B.R.T.'s motion for "redetermination" is affirmed.[11]

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

MESCHKE, concurs in the result.

be considered: *Provided,* That where a consenting parent evidences a desire for anonymity, the court or agency shall give weight to such desire in applying the preferences." [Emphasis in original.]

9. B.R.T. and the amicus curiae assert that *Matter of J.R.S.,* 690 P.2d 10 (Alaska 1984), supports their proposition that this case be remanded so that an adoptive placement can be pursued that complies with the Act. However, in *Matter of J.R.S.,* the court vacated an adoption order and remanded for another hearing on the ground that the lower court had erroneously denied the tribe's motion to intervene in the adoption proceedings as a matter of State law, and not on the ground that the placement preferences had been violated. The procedural aspects of the instant case render this particular conclusion of the court in *Matter of J.R.S.* inapposite under the circumstances.

10. We note that some courts have held that the Indian Child Welfare Act does not require invalidation of a valid separate action because of an invalid prior one. See *D.E.D. v. State,* 704 P.2d 774 (Alaska 1985); *Matter of M.E.M.,* 679 P.2d 1241 (Mont.1984). By analogy, if in fact the preadoptive placement procedure was defective in this case, it would not necessarily render invalid a procedurally correct adoptive placement. However, in such a case, the adoptive placement arguably could not be premised upon considerations flowing from the defective preadoptive placement, i.e., bonding between the foster parents and child. Cf. *Matter of M.E.M., supra; Hust v. Hust,* 295 N.W.2d 316 (N.D.1980).

11. Other issues raised by the amicus curiae were not raised by B.R.T. We granted the amicus curiae permission to file a brief in this case "with the understanding that the brief will be considered only to the extent it speaks to issues raised by the appellant." Accordingly, we do

not consider the additional issues raised by the        amicus curiae.