STATE OF MISSOURI ex rel., PRESTON HALBERT, Respondent, v. HARRY CLYMER et al., Appellants.

Springfield Court of Appeals, June 3, 1912.

1. SCHOOLS: Attending School: Non-Residents: Child Not Supported by Parents. In a mandamus proceeding against directors of a school district to compel them to permit the relator's grandson to attend the public schools in said district, in which district the relator was a taxpaying citizen, it appeared that the parents of the boy resided outside the district, but that the grandfather had made an arrangement with the boy's father to take the boy to live with him and since then had controlled

him, purchased his clothing and furnished him with the necessaries of life, and the boy's parents had contributed nothing to his support. *Held*, that under the fourth clause of section 10785, Revised Statutes 1909, the grandson was entitled to attend school in relator's district.

2. ———: ———: ———: ———. Section 10785, Revised Statutes 1909, is not ambiguous and plainly provides that children, who are unable to pay tuition and whose parents are not contributing to their support, shall have the privilege of attending school in any district in which they may have á permanent or temporary home and it will be noticed that the privilege is granted regardless of the residence or domicile of the parents.

Appeal from Crawford Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Harrison & Norvell* and *Harry Clymer* for appellant.

(1) Under the statute only *bona fide* residents of a school district are entitled to attend school without paying tuition, unless they come within the exceptions therein contained. R. S. 1909, sec. 10785; Lexington ex rel. v. Bank, 130 Mo. App. 692; Binde v. Klinge, 30 Mo. App. 285. (2) In order to constitute a minor resident for school purposes the parent or guardian must be a resident of the school district. State ex rel. v. Smith, 64 Mo. App. 213; School District v. Matherly, 84 Mo. App. 140. (3) The residence of the parents being in Greene county, the legal residence of the minor is in Greene county and not in Crawford county. Lacy v. Williams, 27 Mo. 280; Lewis v. Costello, 17 Mo. App. 593; De Jarnett v. Harper, 45 Mo. App. 415. (5) Primarily the duty to support, maintain and educate the children rests upon the father. 29 Cyc. 1606; Chester v. Chester, 17 Mo. App. 657; Rankin v. Rankin, 83 Mo. App. 335.

*Farris & Watson* for respondent.

(1) The common school system of this state is a creature of the state Constitution and the laws passed pursuant to its command. The right of children to attend the public schools and of parents to send their children to them is not a privilege or immunity belonging to a citizen of the United States as such. It is a right created by the state and a right belonging to citizens of this state as such. Lehew v. Brummell, 103 Mo. 550. (2) A citizen is one who as a member of a nation or body politic of a sovereign state owes allegiance to and may claim reciprocal protection from its government. 7 Cyc. 133; State v. County Court, 90 Mo. 598. (3) A family is a collective body of persons who live in one house under one head or manager. Grocery Co. v. Monroe, 142 Mo. 170; 19 Cyc. 452. (4) When one stands *in loco parentis* to another he becomes responsible for the maintenance and education of the latter, on the principle that the child is held out to the world as part of his family. Schoulers Domestic Relations (5 Ed.), 370. (5) The father may surrender the care, custody and control of his child to another, subject to his own right of revocation. In the matter of Scarrit, 76 Mo. 582; Weir v. Marley, 99 Mo. 495. (6) This section 10785, has never been passed upon in its present form and we will look to the construction given it before the clauses in dispute were engrafted upon it. A careful examination of the construction then given to this section and the proper application of the rules there advanced, conclusively give the grandson in this case school privileges in the Steelville District. Binde v. Klinge, 30 Mo. App. 285.

GRAY, J.—This action was instituted on the 19th day of February, 1912, by the respondent filing his petition in the circuit court of Crawford county, ask-

164 App.—43

ing that an alternative writ of mandamus issue to the appellants, who constituted the board of directors of the Steelville school district, commanding them to permit Preston Gibson to attend the public schools in said district. The writ was issued and appellants entered their appearance and filed return thereto. The return admitted appellants had refused to permit the boy to attend the school and justified their action on the ground that he was a non-resident pupil, and refused to pay the tuition fee fixed by the board. The trial court found the issues against the appellants, and awarded a peremptory writ of mandamus, and defendants appealed.

The facts are practically undisputed. Preston Gibson at the time this suit originated, was seventeen years of age, and the relator, his grandfather, a taxpaying citizen of the Steelville school district, and had been for many years. The boy's parents resided at Springfield, this state, and his name appeared in the enumeration list as a school pupil, in that city, for the year 1911. The boy had attended school in Springfield for several years, but during vacations had lived much of the time with his grandfather at Steelville. The relator's wife was dead, but he had an unmarried daughter who kept house for him, and lived with him as a member of his family.

Some time in the summer of 1911, the grandfather asked the boy's father to let him have the boy, promising to send him to school, and to clothe and board him. The testimony preserved in the record on this point is as follows: "Q. State what Mr. Gibson did? A. He asked me, he said, 'Grandpa, do you want Preston, do you really want him,' and I said that I did and he says, 'Well, I will give him to you, you can take him and he can stay with you,' and I says, 'I will take him and treat him as one of the family,' and I says, 'I like Pres, he minds me and he is a good boy to me,' and he says, 'You can have him.' Q. That

arrangement that you have testified to is that he is
to remain with you as long as you live? A. As long
as I live or want him. Q. Or as long as the boy
wanted to? A. Yes, sir. Q. No definite time fixed,
is there? A. No, sir. I expect him to stay; I don't
expect to live very long, I am getting old, I expect him
to stay with me until my death. Q. The understand-
ing was that the boy might remain with you as long
as he wanted to, is that true? A. No, sir, if he wanted
to go away now I wouldn't let him."

Under the above arrangement the boy went to
live with his grandfather, who, according to all the
evidence, ever since said time, had controlled the child,
purchased his clothing, and furnished him with the
necessaries of life, and neither his father or mother
had contributed anything to his support.

There was some conflict in the testimony as to
whether the grandfather had agreed with the school
authorities to pay a tuition, but if the child was en-
titled to attend the school without payment thereof,
this question is immaterial.

The rights of the parties must be measured and
determined by the provisions of our statutes read and
construed with reference to the policy of the state in
school matters. The statutory law of the case is found
in section 10785, Revised Statutes 1909. This section
provides that the board may admit pupils not resi-
dents within the district, and prescribe the tuition
fee to be paid by the same. This part of the statute
is followed by the proviso: "That the following chil-
dren, if they be unable to pay tuition, shall have the
privilege of attending school in any district in this
state in which they may have a permanent or tempo-
rary home: First, orphan children; second, children
bound as apprentices; third, children with only one
parent living, and fourth, children whose parents do.
not contribute to their support."

As Preston Gibson is not an orphan or bound as an apprentice and both of his parents are living, his right to attend the school without the payment of the tuition, must be authorized by the fourth subdivision, if at all.

The policy of this state is to educate, and to furnish free of charge, good schools for all children of school age, and even to compel the attendance of children thereto. Section 1 of article 11, of the state Constitution, reads: ''A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the General Assembly shall establish and maintain free public schools for the gratuitous instruction of all persons in this state between the ages of six and twenty years.'' It is therefore the duty of the courts to liberally construe our statutes relating to schools, and in such a manner as to open, and not to close, the doors of the schools against the children of the state. As said by the Supreme Court of Wisconsin in State v. Thayer, 41 N. W. 1014: ''Such children are the wards of the state, to the extent of providing for their education to that degree that they can care for themselves and act the part of intelligent citizens. To secure these ends, laws relating to public schools must be interpreted to accord with this dominant, controlling spirit and purpose in their enactment, rather than in the narrower spirit of their possible relations to questions of pauperism and administration of estates.''

While the statute must be liberally construed, we also recognize the fact that it would not be right to permit children living in districts whose taxpayers have neglected or refused to maintain schools to have the benefits free of charge of schools in districts wherein the taxpayers have burdened themselves to erect school houses, employ competent teachers and maintain schools. [Binde v. Klinge, 30 Mo. App. 285.]

Prior to 1885 the statute contained none of its present provisos, but simply authorized the board to admit non-resident pupils within the district, and to prescribe the tuition fee to be paid. In 1885 it was amended by adding the proviso: "That orphan children, or any children bound as apprentices, shall have the privilege of attending school in any district in the state of Missouri in which they may find a permanent or temporary home, without paying a tuition fee."

While the statute was in this language, the case of Binde v. Klings, supra, was decided by the St. Louis Court of Appeals. In that case Mrs. Binde, a widow, who had resided in the Hermann school district for more than forty years, applied to the court for an injunction to restrain the directors of that district from refusing the privileges of the school to her granddaughter, Paula Muehl. Paula's father resided in Montgomery county, but she was living with her grandmother at Hermann, under an arrangement made with the child's father, to the effect that she was to live with the grandmother until the latter died or the child married. In fact, the arrangement in that case was substantially the same as the one we are now considering. In passing on the case, Judge Thompson held the word "resident" used in the statute, was to be distinguished from the word "domicile," and without the proviso in the statute, if the child had gone to live with the grandmother without any expectation of returning to its parental residence while the grandmother lived, or while the child remained unmarried, and not merely for the purpose of acquiring the privilege of a better school than existed at the domicile of the parent, she might be a resident of the grandmother's school district, although the father resided elsewhere. The court held, however, that the proviso limited the general language, and only permitted orphan children, or children bound as apprentices, to attend schools in districts where they had a permanent

or temporary home without paying tuition fees, and said that by admitting certain non-residents the Legislature necessarily excluded the idea that other non-residents were entitled to the privilege.

A careful reading of the Binde case will lead to the conclusion that had the statute then been in its present form, a different judgment would have been rendered.

The statute is not ambiguous, and plainly provides that children who are unable to pay tuition, and whose parents are not contributing to their support, shall have the privilege of attending school in any district in which they may have a permanent or temporary home. It will be noticed that the privilege is granted, regardless of the residence or domicile of the parent.

It seems to us that the evidence clearly brings the case within the fourth subdivision of the statute. The boy, to all intents and purposes, was a resident of the school district, although his domicile may have been at Springfield. He was living in the district as a member of the relator's family, and under an agreement made with his father by which the relator had agreed to take, care for, and educate him. It was not a contract made for the sole purpose of permitting him to attend the Steelville school. The grandparent was aged, and the boy had lived with him a part of the time for more than five years, and undoubtedly there existed between them a degree of affection perhaps equally as strong as that between father and son. The common experience of mankind proves the truth of this statement, and therefore, it needed the testimony of no witness to establish it. But the grandfather did testify that he liked the boy and wanted him to live with him, and it was satisfactory with the father and the son also. There is no claim that the contract was not made in good faith, or that it was not being strictly performed by all parties thereto. The fact that it was

not in writing was a matter that the parties alone were concerned about, and no stranger could set it aside or take advantage of the failure to observe formality in its execution.

In McNish v. State ex rel., 104 N. W. 186, Mrs. Dimick applied for a writ of mandamus to compel the school board to permit Iva Dimick to the public school of the city of Freemont without paying a tuition. The mother of the child was a cousin of the relator, and died in the state of Iowa, leaving a husband and other children residing in that state. The relator asked the father to let her have the child, promising to take her to her home in Nebraska, and to educate and treat her as her own child. There was no written contract, but the father consented, and the child went to live with the relator, but was refused by the board of directors the right to attend school in relator's district without the payment of tuition. The statute of Nebraska provided: ''Such schools shall be free to all children between the ages of five and twenty-one years, whose parents or guardians live within the limits of said district.'' The court granted the writ and said: ''It is true that the relator had never been appointed by a process of any court the guardian of Iva Dimick, and yet no reasonable mind could deny that she does not stand *in loco parentis* toward the child. When the father found that on account of the death of his wife, his own straitened financial circumstances, and the large size of his dependent family, he was unable to keep the children with him, he yielded to the request of the relator to furnish a home for the child, and to educate and care for it in all respects as if it had been the natural child of the foster mother. Now, the question arises as to whether our statute, is to be narrowly and technically construed for the purposes of shutting the doors of the school houses in the faces of many of the boys and girls, and turning them out into the street and by-ways to grow up in idleness and ignorance, or

whether it shall be liberally and broadly interpreted in the spirit of our Constitution, which says: "The Legislature shall provide for free instruction in the common schools of the state of all persons between the ages of five and twenty-five years."

We have not overlooked the point forcibly made in appellants' brief that the Steelville district is largely maintained by tuition fees received from non-resident pupils, but we do not believe that the effect of this decision will be to deprive the school of such fees. This boy did not go to Steelville for the purpose of obtaining the benefit of its schools. While in all probability, the schools of Steelville rank with the other high schools of the state, and afford excellent facilities for the education of the youth, yet it must not be overlooked in this case, that this child's parents live in Springfield, where, no doubt, schools of equal standing are maintained, and there could possibly have been no reason for sending the child to live with its grandfather for the purpose of better school facilities.

An instructive case is State v. Selleck, 107 N. W. 1022. In that case the Governor and the Superintendent of Schools of the state applied for writ of mandamus to compel the board of education of the school district of Lincoln, the capital of the state, to permit their children to attend school without the payment of tuition. As to the Governor, the Constitution of Nebraska, as ours, required him to reside at the seat of government during his term of office. There was no such provision as to the school superintendent. Both of the state officers maintained their legal residences at their former homes, which were not in the city of Lincoln. The court held that their children were entitled to attend the schools, and that the word "reside," contained in their statute, as it originally existed, would not necessarily be construed to mean a legal residence as distinguished from actual inhabit-

State ex rel. v. Clymer.

ance, and that the true test was the motive or intention of the parents when they took up their abode in the school district. And if the family or the person or persons having legal custody and control of children of school age, removed to and lived in a school district, principally from other motives than obtaining the privilege of the schools for their children, even though their stay in the school district is not expected to be permanent, their children should not be deprived of school privileges while so living in the district. On the other hand, if the removal is to the school district for the purpose of obtaining the advantages of the school, without expense to the family, the school authorities may protect the district from such imposition. To the same effect is School District v. Matherly, 84 Mo. App. 140.

We believe the above named cases correctly interpret the law, and we have no doubt of the ability of the trial court to determine, on a hearing, whether the pupil is in the district temporarily, and for the purpose of obtaining the benefits of the school therein, without contributing to the support thereof, or whether he is there under such conditions as entitle him to attend the school free of charge. But regardless of this, for us to hold that Preston Gibson, under the testimony, is not entitled to attend the Steelville school, without the payment of the tuition, is to annul one of the provisions of the statute, and this, we have no right to do.

The judgment will be affirmed. All concur.