**James R. McPHERSON, Plaintiff-Respondent,**

**v.**

**Mary Roberta McPHERSON, Defendant-Appellant.**

**No. 33456.**

St. Louis Court of Appeals.

Missouri.

Nov. 18, 1969.

Deeba, DeStefano, Sauter & Herd, Jack L. Koehr, St. Louis, for defendant-appellant.

John H. Mittendorf, Union, for plaintiff-respondent.

SMITH, Commissioner.

This cause reaches us on appeal from an order on a motion to modify a divorce decree which had originally placed the custody of the parties' son with the wife, defendant-appellant. After hearing on the motion to modify, the court found a change in circumstances since the decree, and found that the welfare of the child would be promoted by placing the custody with the paternal grandmother, subject to reasonable visitation of the father and mother. Order entered accordingly, from which the wife appeals.

The parties were married November 28, 1964; the child, Christopher, was born October 15, 1965; separation occurred December 4, 1965; husband filed his petition for divorce January 20, 1966. Following husband's dismissal of his petition, divorce was awarded wife on her cross-bill on February 24, 1966, with custody of the son in the wife. In April, 1968 the husband filed a motion to modify requesting a change of the custody provision. On September 12, 1968, the husband filed the motion to modify upon which hearing was held. The record is silent as to the disposition of the April motion; the parties tried the matter on the actions of the parties

since the divorce, and no question was raised in the trial court or here concerning the first motion. We treat the second motion as an amendment of the first.

The motion to modify alleged many grounds for the relief sought. As finally tried, however, the evidence went only to the wife's failure to provide the child with proper care, that she absented herself from the child for prolonged periods of time, that she immorally associated with men, and that the welfare of the child required a change of custody.

Following the divorce the father entered the service, although he had not known this at the time of the decree. He remained in the service until the first of April, 1968, and shortly after his return filed his initial motion to modify. On the date of the divorce Mrs. McPherson, the paternal grandmother, began keeping a diary, which apparently contained only a listing of the dates on which she and her husband kept Chris. She testified that each of the occasions on which Chris stayed at her home were at the request of the mother (appellant), who either brought Chris to the grandparents' home or requested them to pick up the child. We have set out in the margin the inclusive dates of Chris's stays in the grandparents' home, the first date in each group being the arrival, the second the departure.[1]

■ The grandmother additionally testified that on fourteen occasions she took the child to a doctor. Little evidence was adduced to show the nature of the illnesses involved although what evidence there was indicated them to be minor, i. e., colds. This was the only evidence going to the allegation of lack of proper care, other than the evidence of prolonged absences discussed hereafter. We cannot find that this evidence of trips to the doctor establishes a lack of care for the health of Chris by the mother. We know mothers and grandmothers sometimes differ on what warrants a trip to the doctor. Certainly the evidence does not establish that the boy had any serious medical condition which was disregarded or ignored by his mother.

■ Considerable testimony was elicited to establish the immoral conduct of the mother. Stripped of innuendo the testimony established one occasion when she spent a night in a motel with a man. It further warranted the inference that she was keeping regular company with another man under circumstances which would cause a suspicion of a sexual relationship but which would not clearly establish it. We do not believe the record supports a change of custody on the basis of the wife's immorality. No continuing pattern of immorality was established and one act of immorality does not render a parent unfit, or call for change of custody. Moore v. Moore, Mo.App., 429 S.W.2d 794[5]. Further, there was no evidence that any immoral act was committed in the child's presence or while he was in the actual care of the mother. In fact, the evidence established that on the occasions testified to, the child was with the paternal grandparents.

1. 

| | | |
|---|---|---|
| 3/6/66 –3/11/66 | 7/12/67–7/23/67 | 12/15/67–12/20/67 |
| 3/28/66–4/9/66 | 7/26/67–8/12/67 | 12/21/67–12/24/67 |
| 4/18/66–4/29/66 | 8/26/67–9/3/67 | 12/28/67–1/7/68 |
| 5/14/66–5/21/66 | 9/4/67 –9/17/67 | 1/19/68–1/23/68 |
| 11/6/66 –11/11/66 | 9/24/67–9/30/67 | 1/26/68–1/28/68 |
| 11/23/66–11/29/66 | 10/3/67 –10/5/67 | 1/31/68–2/3/68 |
| 12/30/66–1/4/67 | 10/11/67–10/13/67 | 2/9/68 –2/18/68 |
| 1/24/67–1/29/67 | 10/17/67–10/22/67 | 2/24/68–2/25/68 |
| 2/27/67–3/2/67 | 10/29/67–11/6/67 | 2/25/68–3/3/68 |
| 3/24/67–3/26/67 | 11/8/67 –11/17/67 | 3/8/68 –3/10/68 |
| 4/14/67–4/18/67 | 11/19/67–11/22/67 | 3/15/68–3/17/68 |
| 5/19/67–5/31/67 | 11/24/67–11/26/67 | 3/28/68–4/8/68 |
| 6/11/67–6/18/67 | 11/28/67–11/28/67 | 4/13/68–4/14/68 |
| 7/5/67 –7/6/67 | 12/1/67 –12/9/67 | |

There is nothing upon which a conclusion could be based that the mother's conduct in any way affected the child or created an unsuitable moral environment. Yount v. Yount, Mo.App., 366 S.W.2d 744[7].

We turn then to what we consider the crux of this litigation, the mother's absenting herself from the child for long periods of time. We should initially point out that the mother did not testify in this case, although present in court, and no evidence was adduced which cast any doubt on the accuracy of the grandmother's testimony regarding her care of Chris, heretofore set out. Wife relies solely on two principles of law for reversal. She asserts first that no change in circumstances has been shown which would warrant a modification of the decree, and secondly, that a natural parent is entitled to custody of her child unless it is made manifest to the court that she is presently unfit or incompetent to care for the child. We take these contentions in reverse order. Courts in determining custody of children are at all times guided by the paramount issue, the welfare of the child. Parental rights are secondary to this issue. The status of the mother as the "usual" custodian of the child has been discussed by this court in Stanfield v. Stanfield, Mo.App., 435 S.W. 2d 690, l.c. 692, wherein the reason for this status was explained as follows:

"* * * And at the present time about all that can be said as a generality controlling custody matters is that as between parents no presumption can be indulged in favor of one parent against the other except in cases, *where all else is equal,* the custody of a child of *tender* years will be given to the mother. * * That statement of the law is of course based on the premise that the father will be at work earning a livelihood for his family, and that the child is of a tender age and that the mother will be in the home taking care of the child's needs, training the child for citizenship, developing his moral background, spiritual culture, a sense of social response and reverence for God. The mother's preferential right of custody hangs on the teaching of these elements. * * *"

Even as to third persons, such as grandparents, the preferential right of the mother turns not on the fact of motherhood, but on the acts of motherhood. The original decree here granting custody to the mother presumably did so upon the basis of the reasoning above set forth. Following that decree the mother during a two year period left the child with the grandparents on 41 occasions for a total of 240 days. During all or most of this time the mother resided in an apartment in north St. Louis County. The grandparents lived in Pacific, Missouri. During the year prior to the filing of the motion to modify, the child was with the grandparents 179 days out of 365, and from July 1, 1967 through April 14, 1968, was with the grandparents 156 days out of 288. Additionally, the record shows that on occasions the child was with the maternal grandparents and that on occasions the mother used baby sitters. During most of this period the father was in the service and for 18 months was overseas, so these occasions cannot be explained away as visits with the father. In fact they were not explained at all. In this posture the reasons for placing a child with his mother do not exist, and she is in no position to assert that the fact of her motherhood alone requires the child remain in her custody. During this highly formative period of Chris's life he was constantly shunted back and forth between two homes for no apparent valid reason.

The mother asserts that no change in circumstances has occurred since the decree. "Change in circumstance" is an elusive phrase at best. We believe in child custody cases it denotes the concept of conditions which come into existence after the decree or become known after the decree, which if known at the time would have caused the court to make a disposition other than it did. The post-decree

actions of the mother here in absenting herself from her child on the frequent and accelerating basis that she did certainly constitutes a change in circumstances. It is difficult to believe that any court would have given her custody of this child had it known at the time that these absences would occur with the frequency they have. The conduct of the mother justified the trial court in deciding a change of custody was for the benefit of the child.

■ No contention is made that the grandmother receiving custody is unfit. The home into which the child has been placed by the order appealed from is not inferior to that in which the mother now lives. The father resided in his parents' home at the time of hearing, so the child will have the benefit of being with one of his parents. The person in whom the custody has been placed is the same person to whom the mother frequently entrusted the child since the decree, and nothing appears of record that the grandmother is not fully capable of providing the care and training required. Nor does the asserted difference between church attendance practices between mother and grandmother provide a basis for retaining custody in the mother. Spiritual training is not determined by frequency of church attendance but by day to day teaching and supervision. It is the day to day supervision which the mother has failed to provide, not only in this but in many equally important areas. The trial court had the opportunity to see the grandparents as well as the parties, and there is nothing in the record which requires us to conclude it abused its discretion in the selection of a custodian. The mother now resides with her parents in the same community as the custodian, and the decree provides reasonable visitation rights. The record justifies the placing of the custody of the child with the paternal grandmother. Compare Yount v. Yount, Mo.App., 366 S.W.2d 744 [10].

The order is affirmed.

PER CURIAM.

The foregoing opinion by SMITH, C., is adopted as the opinion of this Court. Accordingly, the order is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.

**T., Plaintiff-Appellant,**

v.

**T., Defendant-Respondent.**

**No. 33460.**

St. Louis Court of Appeals.

Missouri.

Nov. 18, 1969.

