George S. FOWLER, Jr., et ux., Plaintiffs-Respondents,

v.

CLAYTON SCHOOL DISTRICT et al., Defendants-Appellants.

No. 36529.

Missouri Court of Appeals, St. Louis District, Division One.

Aug. 19, 1975.

Motion for Rehearing or Transfer Denied Oct. 22, 1975.

Ziercher, Hocker, Tzinberg, Human & Michenfelder, Gerald R. Ortbals, Clayton, for defendants-appellants.

Mark M. Wenner, St. Louis, for plaintiffs-respondents.

WEIER, Presiding Judge.

Plaintiffs, who are the parents of two small children of school age, filed suit against the Clayton School District and its superintendent seeking an order of court to establish that plaintiffs and their children are residents of the school district and are entitled to attend the district's schools without payment of tuition. Plaintiffs sought a judgment reimbursing them for prior tuition paid and enjoining the defendants from imposing any tuition charge or other enrollment fee upon the plaintiffs or their children so long as they continue to reside at their described premises. Judgment was rendered in favor of plaintiffs on all issues and the defendants were ordered to refund to plaintiffs without interest the sum of $1,685.39 paid for tuition for the 1973–74 school year.

Defendants have appealed, contending that the court disregarded plaintiffs' burden of proof to establish a change of domicile; that the court erred in subordinating all objective evidence to a single subjective factor, that is, the intention of the parties seeking to establish domicile; and that the trial court's judgment was erroneous in that it was predicated on invalid public policy considerations. Plaintiffs' case succeeds or fails upon the evidence which establishes their place of domicile, either in the City of Clayton, which is in St. Louis County, or in the City of St. Louis, a separate political entity from the County. Plaintiffs' residence, located at 6255 Wydown Boulevard, was constructed upon a lot which lies partially within the City of St. Louis and partially within the City of Clayton. Each municipality is organized into a separate school district which maintains separate school facilities. Clayton contends that only a small portion of the lot and residence is within its eastern limits and that by far the larger portion of the residence and other improvements upon the property lie within the City of St. Louis.

Plaintiffs, however, contend that the center of their activities is not in the City of St. Louis, but is rather in St. Louis County, which is a separate political subdivision, in that when they moved into the residence they actually intended to move into Clayton. The importance of a determination of the residence of the plaintiffs lies not in whether the children may attend school in the Clayton district, but rather whether plaintiffs must pay tuition charges to that district if the children attend the Clayton schools. The Missouri statute, § 167.151, RSMo 1969, provides in subsection 3: "Any person who pays a school tax in any other district than that in which he resides may send his children to any public school in the district in which the tax is paid and receive as a credit on the amount charged for tuition the amount of the school tax paid to the district." Under this section plaintiffs have the option to send their children to the Clayton schools even if they are domiciled in St. Louis.

1973 taxes for the residence of plaintiffs were based on an assessment as to that portion of the lot lying within the City of St. Louis at $4,900.00 for the land and $20,000.00 for improvements. For the same year, the assessment for City of Clayton-St. Louis County was $950.00 for land only. Taxes paid to the City of St. Louis were $1,399.38 and City of Clayton-St. Louis County $66.89. For the first semester of the 1973–74 school year, plaintiffs paid the Clayton School District $850.00 and for the second semester of the same school year, after credit for payment of 1973 real estate taxes to the Clayton district, the sum of $835.39, for a total of $1,685.39 in tuition.

■ At common law, the words "domicile" and "residence" are almost invariably employed as synonymous and interchangeable. *State ex rel. Stoffey v. La Driere*, 273 S.W.2d 776, 781[13] (Mo.App.1954). § 1.020(9), RSMo 1969, defines the phrase "place of residence" as "the place where the family of any person permanently resides in this state, * * *." It is obvious that the sense in which the word "resides", as used in § 167.151, *supra*, is that of "domicile". "Residence" or "domicile" are further defined as that place where a person has his true, fixed and permanent home and principal establishment to which, whenever he is absent, he has the intention of returning. *State ex rel. King v. Walsh*, 484 S.W.2d 641, 644[2] (Mo. banc 1972). The establishment of one's residence or domicile is largely a matter of intention, but it is not entirely subjective intention. Intention must be considered in the light of physical acts performed in conformity with this intent to establish the fact of residence. *State ex inf. Reardon v. Mueller*, 388 S.W.2d 53, 59[10] (Mo.App.1965).

■ We consider the facts as they were given in the agreed statement submitted to the trial court. The facts themselves are not in dispute. Rather it is the application of the law to the facts that causes a divergence of opinion. We look first to the physical characteristics of the house and the location of the boundary lines as they cross the lot at 6255 Wydown Boulevard. The lot fronts on the north side of Wydown a distance of 100 feet and runs northwardly slightly more than 200 feet. It is rectangular in shape with opposite lot lines having the same distance. Except for a slight variation south of the 40 foot building line, the boundary line establishing the western city limits of the City of St. Louis and the eastern city limits of the City of Clayton passes through the lot from north to south so that the east 70 feet of the lot are in the City of St. Louis and the west 30 feet are in the City of Clayton. Most of the three story brick residence which occupies this lot and in which the Fowlers live, including their bedroom, the dining room, living room and kitchen, lie wholly within the City of St. Louis. A family room, 12.35 feet by 27.75 feet, the western 5 feet of the living room, the western 5 feet of the children's two bedrooms, and an adjoining bath, and in the basement the western 5 feet of a playroom lie wholly within the Clayton School District.

We next turn our attention to prior location. Plaintiffs moved to the 6255 Wydown address from 32 Kingsbury Place in the City of St. Louis in August of 1973. Plaintiff George Fowler has his place of business and conducts his employment wholly within the City of St. Louis. Both plaintiffs have attempted to register to vote as residents of Clayton, but the St. Louis County Board of Election Commissioners have refused to register plaintiffs, contending they reside in the City of St. Louis.

As to activity factors, most of the family activities of the Fowlers are centered in the St. Louis County area rather than in the City of St. Louis. Although some of these activities are in Clayton, many of them are in communities near Clayton but not in that city. They attend church in the County. They do their personal banking there. They do most of their buying at businesses located in St. Louis County. Likewise, their social and recreational activities are largely in that area.

Counsel for both parties have failed to call our attention in their briefs to any Missouri opinion which exactly resolves the question here presented. We in our own research have failed to find any. Although the problem rarely presents itself in a justiciable controversy, it would appear that various tests, more or less arbitrary, have been applied in other jurisdictions. For instance, if a line divides a house so that the part in one jurisdiction is sufficient in itself to constitute a habitation, whereas the other is not, then the domicile is in the former jurisdiction. Some make a determination based upon where the bedroom of the householder is located. Others may place greater emphasis upon the person's activities and intentions rather than the location of the bedroom or the major part of the house. 25 Am.Jur.2d Domicil § 38, p. 28; Restatement 2d, Conflict of Laws, § 18, Reporter's Note, Comment h, p. 77. In Restatement 2d, Conflict of Laws, § 18(h), p. 75, it is said: "When the dwelling place is situated upon a dividing line between political divisions, it may be difficult to determine in which of these divisions the domicil is. Usually, the domicil will be in that political division where the major portion of the dwelling place is located, particularly if only an uninhabitable part lies in the other. On rare occasions, however, the preponderant portion of the person's dwelling place may be in one political division, while the bulk of his interests and activities, and also those of his family, are in the other."

It is evident from the facts that the major portion of the dwelling place of the Fowlers is located in the City of St. Louis. It is also evident that the part that lies in the City of Clayton would not be a habitable unit in itself. If we would consider this to be the test, then we must say that under the facts the Fowlers reside in the City of St. Louis. If we apply the test as to where the Fowlers' bedroom is located, it would seem that the plaintiffs sleep in the City of St. Louis and there they reside. In considering the third test as to the location of the center of plaintiffs' interests and activities, we would again have to arrive at the conclusion that this would be in the City of St. Louis. Mr. Fowler has his place of business and employment in the City of St. Louis. If plaintiffs vote, they must vote in the City of St. Louis. If they receive mail, it would be sent to that part of the house that is located in the City of St. Louis. By far the major part of the taxes on the property where they live goes to the City of St. Louis. There is such a small portion of the structure located in Clayton that no part of the building in this political subdivision is assessed for tax purposes. Although not conclusive, engaging in business and voting at a particular place are evidence of residence. *In re Ozias' Estate*, 29 S.W.2d 240, 243[8] (Mo.App.1930).

It is true that the social and commercial activities of plaintiffs, as well as church attendance, are not centered in the City of St. Louis. It is interesting to note, however, that not all of these activities are centered in Clayton. It is admitted that some of the shopping which they do is conducted in Richmond Heights; their personal

banking in Brentwood. Activities carried on by the plaintiffs in Clayton may be centered there by reason of convenience but do not in and of themselves outweigh the factors which place plaintiffs in the position of being residents of the City of St. Louis.

Plaintiffs assert that their intent to establish a domicile in Clayton should determine their status as residents of the Clayton School District. But mere expression of intention is simply a self-serving statement which does not in itself create evidence of its truth. Any such statement must be received with caution, and when it is in conflict with other evidence, it must always be subordinated to it. As warned by this court in *State ex inf. Reardon v. Mueller, supra,* 388 S.W.2d 53, 60 (Mo.App.1965): "Intent is a subjective thing. What a man says about it may as easily conceal it as reveal it. It is unrealistic to suppose that a court can penetrate into the obscurities of the human mind and there, with no surer light than that reflected by statements which it is to the litigant's manifest advantage to make, separate fact from fancy and, with any degree of certainty, lay hands on his true intent. Thus the rule has evolved that where the behavior of the householder is at odds with his professed intent, the former will control, for actions speak louder than words."

It is clear to us that from the standpoint of both geographical location and objective evidence of intent, the plaintiffs are residents of the City of St. Louis.

Respondents urge upon us the necessity of giving a liberal, broad interpretation of the word "resides" in § 167.151, RSMo 1969, *supra,* on the basis of the policy as enunciated by the Constitution of the State of Missouri, Article IX, § 1(a), to provide a free education for every child requesting it in a manner so as to open, not to close, the doors of public schools against the children of the state. It is true that the policy of the state is to educate and furnish free of charge good schools for all children of school age. *State ex rel. Halbert v. Clymer,* 164 Mo. App. 671, 147 S.W. 1119, 1120[1] (1912). But as stated by the court in *Halbert* at p. 1120[2], it would not be right to permit children living in one district where the taxpayers have neglected or refused to maintain schools to have benefits free of charge in districts where taxpayers have burdened themselves to erect school houses, employ competent teachers and maintain the schools. Certainly the general assembly by statutory enactment has provided for establishment of school districts and has vested these districts with certain powers and duties to carry out the constitutional mandate. *School Dist. of Oakland v. School Dist. of Joplin,* 340 Mo. 779, 102 S.W.2d 909, 910[1] (1937). But even though children of school age have a fundamental right to attend the public school, this right is to attend the public school established in their district. *State ex rel. Halbert v. Clymer, supra;* *State ex rel. Roberts v. Wilson,* 221 Mo.App. 9, 297 S.W. 419, 420[1] (1927). Under the liberal authority given by the legislature, plaintiffs here have the right under § 167.151, *supra,* to send their children to the schools in the Clayton district even though they do not reside there, but as provided in that statute they receive as a credit on the amount charged for tuition only the school tax that was paid to that district by them.

The judgment heretofore entered by the court is reversed.

DOWD and RENDLEN, JJ., concur.