James H. BYARS, Petitioner-Respondent,

v.

Evelyn L. BYARS, Respondent-Appellant.

No. 10860.

Missouri Court of Appeals,
Southern District,
Division Three.

Jan. 24, 1980.

Gene Gulinson, Curtis W. Carle, Salem, for petitioner-respondent.

Raymond Howard, Jr., Kenneth R. Singer, Howard, Singer & Meehan, St. Louis, for respondent-appellant.

MAUS, Judge.

The parties to this dissolution action were married March 31, 1963, in the City of St. Louis. They had two children, Timothy A. Byars, born November 23, 1963, and Melinda A. Byars, born December 20, 1964. Until their separation the parties resided in St. Louis. The husband has worked for Cocher Drayage in St. Louis since August 13, 1966. In 1975 he made $17,000 from his employment and in July, 1977, was earning $8.50 per hour. The parties were having domestic difficulties and separated on the evening of August 24, 1974, when the husband was escorted from the marital residence by police officers. The husband filed his petition to dissolve the marriage on September 6, 1974, in Dent County, Missouri. At the time of separation the children were in the custody of the wife and remained in her custody until the first hearing upon the petition. After a series of delays this first hearing, which was a plenary hearing, was held on August 4, 1976. At that time the trial court dissolved the marriage; took the question of the property division under advisement and directed the parties to submit proposed orders; awarded temporary custody of the children to the paternal grandparents and directed a home study. A second hearing was had on July 1, 1977, followed by a judgment dissolving the marriage, disposing of the issues of maintenance and property interests and awarding custody of the children to the father "provided they live in the home of the paternal grandparents". The wife was granted reasonable visitation and temporary custody for 30 days each summer and, in alternate years, during the school Christmas vacation. The wife appeals.

In reviewing appellant's points on appeal, "[w]e review the case on the law and the evidence under Rule 73.01 giving

due regard to the trial court's opportunity to adjudge the witness' credibility and aware that the judgment may not be set aside unless it is against the weight of the evidence, wrongly declares or applies the law, knowing that our power to set aside a decree as against the weight of the evidence must be exercised with caution and on 'a firm belief that the decree or judgment is wrong.' " *In re Marriage of B____ A____ S____*, 541 S.W.2d 762, 763 (Mo.App. 1976); *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). No findings of fact were requested under V.A.M.R. Civil Rule 73.01, Subd. 1(b). "[A]ll fact issues will be deemed found in accordance with the result reached and the judgment will be affirmed if it is correct on any reasonable theory supported by the evidence." *Roth v. Roth*, 571 S.W.2d 659, 664 (Mo.App.1978).

■ The wife first argues the court erred in determining the husband was a resident of Dent County at the time he filed his original petition on September 6, 1974. Section 452.300, Subd. 1, V.A.M.S. in part provides: "[T]he proceedings shall be had in the county where the plaintiff resides". The term "resides" is equivalent to being "domiciled in". *In re Marriage of Bradford*, 557 S.W.2d 720 (Mo.App.1977). A domicile is "that place where a person has his true, fixed and permanent home and principal establishment to which, whenever he is absent, he has the intention of returning". *Fowler v. Clayton School District*, 528 S.W.2d 955, 957 (Mo.App.1975). At the time of the separation the husband's parents were living on 99 acres in Dent County titled in the names of the parents and the parties to this action. They were living in a mobile home purchased by the respondent. Upon the separation, the husband was in a position to select a domicile of his choice. *Nichols v. Nichols*, 538 S.W.2d 727 (Mo.App.1976). He returned to his parents' home the weekend following the separation and did so each weekend, with the exception of three weekends, from that time to the time of the final hearing. The fact the respondent continued to work in St. Louis does not nullify a change in domicile. *State ex inf. Reardon v. Mueller*, 388 S.W.2d 53 (Mo.App.1965). In view of his testimony that upon the separation he intended to make his home with his parents, there was substantial evidence that at the time the petition was filed the respondent was a resident of Dent County. *Nichols v. Nichols*, supra.

■ The appellant then cites the fact the recitals in the final decree were to the effect the respondent was a resident of Dent County at the time he filed his first amended petition and argues there has been no determination of residence at the time the original petition was filed. The appellant in her answer denied the respondent was a resident of Dent County. The entry made at the conclusion of the first hearing includes the following: The "court finds . . . that at the time the petition was filed, petitioner was a resident of Dent County." Some five months later the appellant filed her motion to dismiss alleging the respondent was not a resident of Dent County. The court considered the motion and overruled it, noting that the court had found the petitioner a resident of Dent County at the time the petition was filed. If the final decree had contained no finding concerning residence, the decretal portion of that decree would have implied a determination of venue. *Lee Holding Company v. Wentzville Oil Company*, 409 S.W.2d 210 (Mo.App.1966). " 'An obscure judgment entry may, however, be construed with reference to the pleadings and *record*, and, where on the *whole record* its sense can be clearly ascertained, the judgment will be upheld.' " *State ex rel. Whatley v. Mueller*, 288 S.W.2d 405, 410 (Mo.App.1956). "Moreover, in construing a judgment, reference to the record as a whole, including any memorandum by the trial court, should be made in order to determine if the judgment has left any issues undecided." *Cady v. Hartford Fire Ins. Co.*, 554 S.W.2d 499, 501 (Mo. App.1977). The finding implied by the decretal portion of the final decree and expressly determined by the court in two occasions is not abrogated by the not conflicting, but superfluous recital in that decree. *Donelson v. Board of Zoning Adjustment,*

368 S.W.2d 728 (Mo.App.1963). The appellant's point that the trial court did not find the petitioner was a resident of Dent County when the petition was filed is denied. *Wegman v. Fendelman*, 333 S.W.2d 290 (Mo.App.1960).

▮ The appellant's next point is that the trial court erred in placing the children in the custody of the respondent, provided they live with their grandparents. In determining custody, the trial court is directed to consider all relevant factors, including those specifically set forth in § 452.375, with primary concern for the welfare of the children. *L. H. Y. v. J. M. Y.*, 535 S.W.2d 304 (Mo.App.1976). By necessity, most often this determination is made by a comparison of the custodial settings available to the children. While the court is fundamentally concerned with the future, the court must consider the past actions and environment of those seeking custody as a guide in making that determination. *Matter of C___ W___ B___*, 578 S.W.2d 610 (Mo.App.1979). In respect to the appellant the trial court could have reasonably found: that she often left the children alone into the night and early morning; she had directed the children to assist her in shoplifting; she had male visitors in the home at late hours and on one occasion ordered the children from the bedroom so she and her guest could visit and on another occasion was seen at 2:00 a. m. wearing a negligee in the street in the company of a man; and that she interferred with the respondent's visitation with his children, even in the face of a court order and prohibited them from talking to him on the telephone. At the time of the final hearing, she was living in an apartment in a house in which her sister and her boyfriend also had apartments. If she was awarded custody, she proposed to move to a home in which she held a one-sixth interest and which would require an expenditure of $2500 to make habitable. She was working six days per week, but would have the lady up the street watch the children. On the other hand, all of the evidence concerning the respondent was not favorable. He admitted that following the separation, during the week, he had lived with a young woman to whom he was not married. He had taken the children to their shared apartment. During the hearing reference was made to a letter a friend of the brother of this young woman had written to Melinda. The letter is not in evidence but was obviously indecent. This friend also talked to her on the phone and came to see her at least once. The parents disapproved of this relationship, but their explanation of their reactions are less than satisfactory. At the time of the second hearing, the respondent lived in his parents' mobile home each weekend. It was not shown where he then stayed in St. Louis during the week. The respondent believed it was best for the children if they continue to reside with the grandparents, although he would care for them in St. Louis.

The situation of the grandparents was not ideal. They each had health problems, but were able to perform their domestic tasks. At the time of the second hearing an additional unit had been added to the mobile home. The home was not well kept and "the front yard is decorated with an assortment of tires, wheels, car parts and an old city bus." The household consisted of the grandparents, their youngest son, four children of another daughter and the two children in question. However, Melinda had her own bedroom and Tim shared a bedroom with his uncle. Appellant testified that on an occasion in St. Louis she discovered the uncle molesting Melinda and told respondent but he did nothing. Respondent denied any such report. Melinda did not recall any trouble with her uncle. The trial court was entitled to discount this accusation. The grandparents testified as to the mutual affection between them and the children and their desire and ability to care for the children.

▮ The trial court could properly consider the wishes of the children as to their custody. As authorized by § 452.385 they were interviewed in chambers at both the first and second hearings. At each hearing to one degree or another, each child expressed a preference for their father as

their custodian. At each hearing, each child expressed compatibility with the grandparents and a preference for living "down here". It was in the latter interview the children's adjustment to their home, school and community was primarily developed. See § 452.375. There was substantial evidence the children were well adjusted, doing "chores" about the home, attending and active in school and church affairs and that they were happy in their environment. The trial court expressed doubt concerning the desirability of either parent to have custody. The merits of the home and care available with the grandparents were properly considered. *Matter of C____ W____ B____*, supra; *McPherson v. McPherson*, 447 S.W.2d 791 (Mo.App.1969). The trial court acted with consideration for the parents, but obviously based its determination of custody upon the best interests of the children. There was substantial evidence to support that determination. *Johnson v. Johnson*, 526 S.W.2d 33 (Mo.App. 1975); *Hugeback v. Hugeback*, 444 S.W.2d 23 (Mo.App.1969). The appellant would taint the trial court's determination with a charge of bias against her and against the metropolitan community in which she lives. She bases the latter upon the trial court's remark there was no safe place to live in the big metropolitan areas. In doing so she has taken the remark from its context in which the trial court was referring to the appellant's action in leaving her children alone. The former is primarily based upon a charge the trial court assumed the role of advocate during the interviews of the children. Suffice it to say this court has scrutinized the record and it demonstrates the contrary is true.

The appellant's last point is that the court did not allow her ample time to confer with her appointed counsel prior to the first hearing and she was denied a full trial and due process. On this issue, the following is a partial history of cases. It was set for a hearing on April 12, 1976, but was continued to permit her second attorney (her original counsel having been appointed circuit judge) to withdraw. The case had been set for trial on August 4, 1976, "for quite some time", as recited by the trial court. On July 2, 1976, counsel for the respondent by letter advised the judge of the past delays, the fact appellant had told respondent the case would not be tried on August 4, 1976, because she wasn't going to get counsel until a day or two before trial, and of the respondent's intentions to proceed to trial, whether or not she had counsel. A copy was mailed to the appellant. Nevertheless, on August 4, 1976, the appellant appeared without counsel. Because of the custody issue, the trial court appointed counsel for appellant. She was allowed one and one-half hours to confer with appointed counsel. She made no objection to his help except to say there were a lot of things she could not tell the lawyer in time, but that there was nothing she needed to tell the lawyer with reference to the children. On appeal appellant concedes the appointed attorney's handling of the case "was good insofar as it dealt with child custody and division of marital property." She complains, however, that the matter of venue was not seriously contested. Facts concerning venue were developed in the first hearing. In addition, when appellant was represented by counsel of her choice at the second hearing, counsel was permitted to again go into this issue and did in fact ask respondent questions about his registration for voting. Appellant had a right to an opportunity to be represented by counsel. However, that does not include the right to delay proceedings by failure to take steps to obtain counsel. Under the circumstances, the trial court could have proceeded in the absence of counsel. However, the appellant was afforded and exercised the right to be represented by counsel appointed by the trial court. She was again afforded and exercised that right by counsel of her own choosing. She certainly was not denied due process. The trial court did not abuse its discretion in proceeding to trial at the time of the first hearing. *Blessing v. Blessing*, 539 S.W.2d 699 (Mo.App.1976).

Respondent's motion to dismiss taken with the case is overruled. The judgment is affirmed.

BILLINGS, P. J., and GREENE and PREWITT, JJ., concur.